(No. 4170

JACK JETT, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed February 14, 1950.*

HERMAN R. TAVINS, Attorney for Claimant.

IVAN A. ELLIOTT, Attorney General; WILLIAM H. SUMPTER, Assistant Attorney General, for Respondent.

SCHUMAN, C. J.

On September 27, 1948, Jack Jett, the claimant, was in the employ of the respondent, in the Department of

Public Works and Buildings, Division of Highways, as a temporary truck driver to assist in center line marking activities at a salary of $250.00 a month. At approximately 4:30 P.M. on September 27, 1948, claimant was driving a Division of Highways truck in a northeasterly direction on Archer Avenue in the City of Chicago, returning it to the Division's storage shed. As the truck passed through the 5400 block, the right rear wheel came off, allowing the truck to fall to the pavement and settle on the brake housing. Claimant was operating said truck at a speed from 35 to 40 miles per hour. The jar caused claimant to be thrown from his seat and badly bruised and cut his left ankle. Claimant was knocked about in the cab as the truck veered from side to side and he continued his endeavor to bring it under control and avoid collision with other traffic. When the truck finally stopped claimant was positioned with one knee on the seat while his other foot was on the brake. The lower part of his back had hit the side of the door and the steering wheel. His leg was bleeding. That evening claimant's back was sore and his left leg badly swollen.

No jurisdictional questions are involved and at the time claimant was earning a salary of $250.00 per month. He was first employed on September 17, 1948 and he worked regularly at this same salary rate and in the same capacity from the date of his first employment till the date of his injury on September 27, 1948, and earned a total of $91.67. Employees hired in a capacity similar to that Mr. Jett ordinarily worked less than 200 days a year.

Claimant at the time of the injury had two children, Donald and Jacqueline, aged ten and nine, respectively. Respondent paid Dr. H. B. Thomas, Chicago, Illinois, the sum of $112.00, and St. Luke's Hospital, Chicago,

Illinois, the sum of $11.00 for medical expenses in connection with claimant's injury. No further claim is made on account of medical expenses and the only question relates to the nature and extent of claimant's injuries with respect to his claim for complete and permanent disability.

Claimant stated he had suffered no injury to his back nor had he ever experienced his present back pain prior to the accident in question. Prior to his employment by respondent, claimant had been unemployed. His occupation has been that of chauffeur and he has driven trucks, cars or taxicabs for about 22 or 23 years. During the year preceding the accident he had his own business whereby he was driving a truck into farm areas near Chicago to purchase chickens. He stated that, although to his knowledge truck drivers generally received $250.00 per month wages, during the year preceding the accident his earnings had been less due to misfortune in his business. Claimant has not earned any money since the accident. He explained he obtained a job as a mechanic, for which he is qualified, but had to give it up because the nature of the work, bending and twisting, increased the pain in his back. He stated his back hurt when lifting objects. He said he tried digging in his garden and was required to stop on account of pain caused in his back when he put pressure on his foot. Claimant believed he could perform the work of a chauffeur or truck driver as long as he didn't have to do lifting. However, despite efforts through employment agencies he has been unable to get re-employed as a chauffeur or truck driver since the accident. After his back pain did not clear up, he first consulted an attorney in January, 1949; later in April he was given a medical examination by Dr. Samuel I. Weiner. Claimant stated he has had no trouble with his ankle.

Dr. Samuel I. Weiner, physician and surgeon, a member of the staffs of Mt. Sinai and Michael Reese hospitals in Chicago, testified on behalf of claimant. Dr. Weiner since about 1927 has specialized in the fields of industrial medicine and surgery and orthopedics.

Dr. Weiner made a clinical examination of claimant on April 20, 1949, and took anterior posterior and lateral X-rays of his lumbar spine and pelvis. He testified the X-rays disclosed an irregularity and malformation in claimant's lumbrosacral articulation which he believed of congenital origin. There was articular roughening and calcification where the lumbar spine articulates with the sacrum. It was further stated there was extensive spurring of the anterior portion of the body of the fifth lumbar vertebra and a small spur on the anterior interior portion of the body of the fourth lumbar vertebra. It was noted there existed a narrowing of the intervertebral space between the fourth lumbar body and the fifth, and considerable narrowing between the fifth lumbar body and the sacrum posteriorly, also that the lumbrosacral angle was more than normally acute. Dr. Weiner's diagnosis was that of an aggravation of a pre-existing arthritis of the lumbar spine and of a congenital defective articulation of the lumbrosacral region which could have been aggravated by the accident in question and that there could or might be a causal connection between claimant's ill being and said accident. In the doctor's opinion claimant, because of his spinal condition, was unfit for a regular eight hour day's work of driving an automobile.

Dr. Weiner explained that persons having a congenital malformation of the fifth lumbar are particularly susceptible to injury in the region of the lower back because the articulation is not stable and solid providing

the necessary support. He said any form of injury such as a jarring or direct trauma upsets the weakened state and causes the symptoms as in the present case. Dr. Weiner admitted claimant's injury could have been caused by any undue strain on his back as by digging, stumbling while carrying a heavy object, lifting off balance, etc. He stated such a condition is quiescent as long as no strain is put on it, and, upon strain it would recur. Claimant's condition was considered by the doctor to be permanent but that claimant could do any work that did not put a strain on his back. Dr. Weiner stated that cases, as the instant one, where a congenital deformity is found the symptoms are persistent and do not respond to the usual type of treatment.

The Departmental Report sets forth the findings of Dr. H. B. Thomas, who treated claimant for his injuries. Dr. Thomas also found the claimant to have a moderate arthritic condition in his lower lumbar spine and sacroiliac joints, however, that X-ray views showed no injury to the bone. Dr. Thomas treated claimant for the pain he suffered in his lower back, and on November 11th suggested he go to a hospital. Dr. Thomas stated that at the time of his last examination of claimant on December 6, 1948, he could find no spasm in his back, accordingly dismissed him without disability. In his final report, dated December 9, 1948, Dr. Thomas wrote:

". . . Lumbar spine: catches in back when he tries to turn. Bending limited in all directions (bends little unless he bends knees). Reflexes O.K. Back straight but flat. Treatment—Sent to St. Luke's for physiotherapy. Said he did not receive satisfactory results. Injections of novocain and medication. Discontinued any further treatments from St. Luke's. Prognosis—Good. No disability."

A fair and just conclusion to be drawn from the evidence in this case shows that the claimant was earning approximately $50.00 a week at the time of his injury

and according to his testimony, which stands uncontradicted, that the only work that he can perform and could earn any money in would be that of a watchman at which he would earn the sum of $35.00 a week. The difference between his earnings before this accident and after the accident would amount to $15.00 per week. The Court concludes from the testimony that the claimant is entitled to have and receive from respondent the sum of $20.80 per week for a period of 76 weeks, as provided in paragraph E of Section 8 of said Act, as amended, for the reason that the injuries sustained caused the permanent loss of the use of 40% of the claimant's left leg. The evidence shows that the claimant was paid temporary compensation through December 6, 1948. Therefore, compensation payments in this case should start as of December 7, 1948.

Rothbart & Sewell filed a claim for stenographic services in the amount of $67.40. The Court finds that this claim is reasonable.

William J. Cleary & Co. filed a claim for stenographic services in the amount of $21.10. The Court finds that this claim is reasonable.

On the basis of this record, we make the following award:

Forty per cent permanent partial specific loss of the use of the left leg in the sum of $1,580.80, payable in weekly installments of $20.80 commencing on December 7, 1948. Sixty-one weeks of said compensation has accrued to February 7, 1950 in the amount of $1,268.80 and is payable forthwith, the balance of $312.00 is payable at the rate of $20.80 per week for 15 weeks.

An award is also entered in favor of Rothbart & Sewell for stenographic services in the amount of $67.40, which is payable forthwith, and the Court finds that said charge is reasonable, and said claim is allowed.

An award is also entered in favor of William J.

Cleary & Co. for stenographic services in the amount of $21.10, which is payable forthwith, and the Court finds that said charge is reasonable, and said claim is allowed.

This award is subject to the approval of the Governor, as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."